J. W. STONE v. BLUE RIDGE TIE CO.

Eastern Section.   May 21, 1927.

Petition for Certiorari denied by Supreme Court, January 19, 1928.

J. W. Stone, of Harriman, for appellant.
Jones & Andrews, of Knoxville, for appellee.

HEISKELL, J. The original bill was filed in this case seeking to recover approximately $150, from the defendant for the alleged breach of a contract of sale of cross-ties, which the defendant had agreed to purchase from the complainant.

The defendant answered denying all liability. Proof was taken and the case was heard before the Hon. Chas. Hays Brown, Chancellor, when the court dismissed complainant's bill, from which decree complainant prayed and perfected his appeal to this court.

On April 12, 1924, the defendant entered into a written agreement to purchase from the complainant from three to five cars of mixed oak cross-ties, to be loaded at Rockwood, Tennessee, on or before July 1, 1924, of grades from 1 to 5, at a price fixed for each grade. On the face of the contract appears this:

"Note. No. 4 and 5 must be loaded separately from No. 1, 2 and 3. The No. 4 and 5 must be loaded together in one car, and No. 1, 2, and 3 are to be loaded together in one car. Ties to be inspected at loading place by railroad inspector."

On the date fixed for loading the ties, the complainant insists that he had 700 ties either on the railroad yards at Rockwood, or within reach so they could be brought in by truck in time for loading. Complainant insists that this was enough for three carloads of the grades specified.

The contention of complainant is thus stated:

"On the day appointed for the loading, the defendant sent a representative and there was with him a man that was said to be an inspector of the New York Central Railroad. A car of Grades No. 4 and No. 5 was started to be loaded, but this so-called inspector, ignored the specifications as called for the various grades of ties and refused to load into the car number of ties that were sound and of the sizes called for to go into the car of these two grades and refused to give a fair inspection, and after loading 102 ties into the car said that he could not get a carload and quit and left. Said inspector did not give a fair, honest and proper inspection of said ties, ignoring all rules of inspection.

"These ties were stacked on the yards at Rockwood and remained there until in January and February, 1925, when complainant sold 492 of them to S. L. Hunt, trading as the Hunt Lumber Co., of Sweetwater, Tennessee, at which time they were taken up and inspected by an inspector of the Norfolk & Western Railroad, which road used the exact same specifications for the different grades, of ties as did the New York Central Railroad, to whom the defendant claims to have sold the ties."

Complainant insists that upon a proper and fair inspection the ties for loading at the time fixed would have loaded two cars with No. 4 and No. 5 grade ties and one car with the lower grades, but

that by reason of the rejection of the ties by the inspector of defendant and the decline in price before they could be sold, the complainant lost at least $150.

The defendant does not object to the complainant's statement of facts down to the time fixed for loading, and agreed that 102 ties had been loaded in one car when it is claimed the inspector who, inspecting for the defendant, looked over the ties available and found that a load of No. 4 and No. 5 grade ties could not be obtained out of the lot and that a carload of 1, 2 and 3 grade could not be had, and therefore declined to go any further with the loading. Defendant insists that the inspection was fair and according to usual rules.

The defendant says the ties had been contracted to be sold by it to the New York Central Railroad and that defendant was anxious to have the sale go through, as there was a profit in it to the defendant. That the defendant had no connection with the inspector sent by said railroad to inspect the ties and used no influence to induce him to reject the ties, but on the contrary wanted the ties accepted.

Complainant asserts that the price of ties had declined between the date of sale in April and the time fixed for loading in July, and this is denied by the defendant.

The assignments of error present the single question, was there bad faith on the part of the defendants in the inspection and the rejection of the ties? Cross-ties are useless in trade except for sale to some railroad company. The contract provides for inspection at loading point, by the railroad inspector. This, of course, means the inspector of the railroad to which the defendant should sell the ties. This provision was put in the contract for the protection of the buyer and to prevent dispute as to quality of ties sold. Therefore, the inspection must control unless there is fraud or bad faith and the burden is upon the complainant to show this.

The rule is stated in Ruling Case Law, Article on Sales, sec. 731, thus:

> "As regards the reasonableness of the rejection of the article tendered, the better view is that in the absence of fraud or bad faith in the conduct of such third person, in respect to the fact of his approval or the withholding of it, his judgment or determination is to be accepted as final and conclusive. No mere error or mistake of judgment will vitiate his determination. The very object of his appointment is to prevent and exclude contention and litigation; hence nothing short of fraud or mala fides in the exercise of his power to reject or approve the article contracted for will dispense with the strict legal effect of the condition precedent. Likewise his approval, in the absence of fraud or bad faith, is conclusive on the buyer."

Counsel do not differ as to this rule of law, therefore, the only dispute is as to the proof on this point. Two witnesses testified on each side. The complainant and J. H. Robbins on one side and S. V. Minsky and A. E. Smith on the other side. Complainant is the principal witness for himself. He claims to be familiar with the grading of cross-ties and says that these ties should have been so graded as to fulfill the contract. He supports this contention by proof of sale of 492 of the ties to the Hunt Lumber Company, when the grading showed that according to the proportion accepted the 700 ties in July should have loaded three cars with grades according to the contract. He says the price declined from April to July. Robbins is a laborer living on a farm of complainant. He supports complainant's testimony, but in rather a mild way.

A. E. Smith was the representative of the defendant who went with the inspector of the New York Central, who was named Wilson, to inspect the ties. He thinks the inspector was right in his opinion that there were not enough 4 and 5 grade ties to load a car, nor enough 1, 2 and 3 grades to make a carload. Smith is an inspector himself. He says inspection is to some extent a matter of the individual opinion of the inspector. That inspectors will differ to some extent and one will reject what another would pass and vice versa, but he thinks Wilson was about right in his judgment. He denies any attempt to influence Wilson.

Minsky is the treasurer of the defendant company. He says the defendant wanted the trade to go through, as there was a profit in the sale to the New York Central. That Wilson was the inspector of the New York Central, to which road the defendant had contracted to sell the ties. That the defendant had no connection with Wilson and made no effort to influence his inspection. He does not think there was any decline in price between April and July.

The burden of proof is upon the complainant to show that the inspection by Wilson was not fair, but was influenced by fraud and bad faith. The proof does not convince the court of the truth of complainant's contention. The Chancellor held the complainant bound by the inspection made and dismissed the bill. We find no error in this action of the court. The assignments of error are overruled and the decree of the Chancellor is affirmed. Complainant and his surety on the appeal bond will pay the costs of the appeal.

Owen and Senter, JJ., concur.